Najat I. MOHAMMED, Plaintiff,

v.

MAY DEPARTMENT STORES, CO., d/b/a Strawbridge's, Defendant.

No. CIV.A.02–1300–JJF.

United States District Court, D. Delaware.

July 22, 2003.

Roger D. Anderson, Laurence V. Cronin, Smith, Katzenstein & Furlow, LLP, Wilmington, DE, for Plaintiff.

Sheldon N. Sandler, Scott A. Holt, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Of Counsel: Betty Tierney, May Department Stores Company Office of Legal Counsel, St. Louis, MO, for Defendant.

## *OPINION*

FARNAN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (D.I. 43). For the reasons discussed below, the Motion will be granted.

## BACKGROUND

Najat Mohammed is a United States citizen of Saudi Arabian descent. (D.I. 7 at 3). Ms. Mohammed is a practicing Muslim who wears a head scarf as part of her religious practice. *Id.*

On October 18, 1999, Ms. Mohammed interviewed for a full-time sales associate position with Defendant. *Id.* In the interview, Ms. Mohammed was asked if she could remove her scarf. *Id.* Ms. Mo-

hammed informed Defendant that she wore the scarf for religious reasons and thus could not remove it. *Id.* Ms. Mohammed was asked to return the next day for an interview with Karen Robinson, Defendant's Human Resource Manager. *Id.* The next day, Ms. Robinson told Ms. Mohammed that wearing a scarf violated Defendant's dress code and was a safety hazard. *Id.* Ms. Mohammed was not hired by Defendant. *Id.*

On November 2, 1999, Ms. Mohammed filed a charge with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant had discriminated against her based on her religion. *Id.* Subsequently, the EEOC filed a Complaint against Defendant on July 10, 2001 (the "EEOC Action").[1] *Id.* at 4. The EEOC Complaint sought to permanently enjoin Defendant's discriminatory practices and to obtain private relief for Ms. Mohammed in the form of back pay, front pay, compensatory damages, and punitive damages. *Id.* The EEOC informed Ms. Mohammed of her right to intervene in the EEOC Action; however, Ms. Mohammed did not do so. (D.I. 45 at A15, A55–A57).

Shortly after the EEOC filed its lawsuit, Ms. Mohammed appeared on the evening news with an EEOC attorney to discuss her case. *Id.* at A82. The EEOC arranged for the interview and asked Ms. Mohammed to appear. *Id.* at A82–A83.

The EEOC's prosecution of the case focused on the alleged discrimination suffered by Ms. Mohammed, and Ms. Mohammed participated in the prosecution of the case. *Id.* at A64, A67–A68, A78, A81. In its initial disclosures, the EEOC identified Ms. Mohammed as an individual with knowledge and stated she should be contacted through the EEOC. *Id.* at A22. All other individuals the EEOC identified in

its initial disclosures had knowledge about Ms. Mohammed and her interviews with Defendant. *Id.* at A22–A23.

Ms. Mohammed assisted the EEOC in responding to Defendant's discovery requests. *Id.* at A64, A67–A68. At one point, the EEOC requested and received an extension of a discovery deadline in order to secure Ms. Mohammed's participation in formulating responses. *Id.* at A27–A28.

In July 2001, Ms. Mohammed returned to Saudi Arabia, where she remained after the events of September 11, 2001. (D.I. 7 at 4–5). In October 2001, Defendant began to attempt to schedule Ms. Mohammed's deposition. Defendant and the EEOC scheduled Ms. Mohammed's deposition for four different dates: January 28, 2002, February 20, 2002, April 9, 2002, and April 17, 2002. *Id.* at A41–A42. Although Ms. Mohammed agreed to each date and was informed by EEOC attorneys of the importance of attending her deposition, Ms. Mohammed did not return to the United States to appear at her four noticed depositions. (D.I. 44 at 5). The EEOC asked Defendant to depose Ms. Mohammed by phone due to the expense and difficulty of traveling from Saudi Arabia, but Defendant declined to do so. (D.I. 45 at A–38).

Ms. Mohammed contends that she could not attend her first scheduled deposition because she could not get time off from work. *Id.* at A70–A71. The EEOC rescheduled the deposition, but Ms. Mohammed could not attend because she could not get permission for her male son to travel with her and, as a Muslim woman, she could not travel alone. *Id.* at 72. Once again the EEOC rescheduled the deposition, and once again, Ms. Mohammed could not attend. On this occa-

---

1. *EEOC v. May Dept. Stores Co.,* C.A. No. 01– 470 (D.Del. July 10, 2001).

sion, Ms. Mohammed's husband would not allow her to board the plane because her brother, who was supposed to pick her up at the airport, did not answer the phone. *Id.* at A73.

After Ms. Mohammed did not appear for her third scheduled deposition date (April 9, 2002), the EEOC rescheduled Ms. Mohammed's deposition for April 17, 2002, and indicated to Defendant that if Ms. Mohammed's personal appearance at her deposition was not certain by April 11, 2002, the EEOC was willing to engage in settlement discussions. *Id.* On April 12, 2002, after receiving no guarantee of Ms. Mohammed's appearance at her April 17, 2002, deposition, the EEOC attempted to negotiate a monetary settlement for Ms. Mohammed with Defendant. (D.I. 45 at A88–A89). Defendant rejected the EEOC's proposal, but did agree to waive its right to recover its costs in exchange for a dismissal with prejudice. *Id.* On April 12, 2002, the parties stipulated to a dismissal with prejudice. *Id.* at A43. Despite being informed that the EEOC Complaint was being dismissed, Ms. Mohammed boarded a flight on the evening of April 17, 2002, and arrived in Delaware late in the day on April 18, 2002, thirty-six hours after her fourth scheduled deposition was to have begun. (D.I. 7 at 7).

On July 16, 2002, Ms. Mohammed filed the instant action (the "Mohammed Action") seeking relief for Defendant's alleged religious discrimination in failing to hire her because she wears a head scarf. (D.I. 1). The Mohammed Action is based on the same acts, namely the two interviews and Defendant's refusal to hire, alleged in the EEOC action.

On August 5, 2002, Defendant filed a Motion to Dismiss (D.I. 4) asserting the defense of res judicata. On October 24, 2002, the Court denied Defendant's Motion to Dismiss and granted Defendant leave to renew its res judicata defense after the deposition of Ms. Mohammed. In December 2002, Defendant deposed Ms. Mohammed, and on January 31, 2003, Defendant filed the instant Motion for Summary Judgment (D.I. 43) contending Ms. Mohammed's claim is barred by res judicata.

## DISCUSSION

■ Summary judgment is proper if there is no genuine issue of material fact and, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Res judicata is an issue of law, and if the doctrine applies, there is no genuine issue of material fact and summary judgment is appropriate.

■ The Third Circuit has stated, "[t]he doctrine of res judicata 'is not a mere matter of technical practice or procedure' but 'a rule of fundamental and substantial justice.' " *Equal Employment Opportunity Commission v. U.S. Steel Corp.,* 921 F.2d 489, 492 (3d Cir.1990)(quoting *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148 (1917)). "Res judicata avoids the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

■ Claim preclusion, the subset of res judicata at issue in the instant case, "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *Id.* at 493

(citing *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984)).

██ In the EEOC Action, the parties stipulated to dismissal of the action with prejudice. "Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir.1972)(citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Therefore, the Court concludes there was a final judgment on the merits in a prior suit, namely the EEOC Action, that satisfies the first element of Defendant's claim preclusion defense.

██ In the EEOC Action, the EEOC claimed that Defendant discriminated against Ms. Mohammed during the hiring process based on her religion. In the instant case, Ms. Mohamed's claim is based on the same facts, alleges the same cause of action, and seeks the same relief. Consequently, the Court concludes that the EEOC Action and the Mohammed Action involve the same claim and that Defendant has satisfied the second element of its claim preclusion defense.[2]

██ Thus, the success of Defendant's claim preclusion defense hinges on whether the EEOC and Ms. Mohammed were in privity. "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." *Restatement (Second) of Judgments* § 41 (2002). "A person is represented by a party who is ... An official or agency invested by law with authority to represent the person's interests...." *Id.* Nonetheless, "[a] person is not bound by a judgment for or against a party who purports to represent him if ... The repre-

sentative failed to prosecute or defend the action with due diligence and reasonable prudence...." *Id.* at § 42; *see also Inofast Mfg., Inc. v. Bardsley*, 103 F.Supp.2d 847, 849 (E.D.Pa.2000)("Privity is said to exist where a party adequately represented the nonparties' interests in the prior proceeding.").

The EEOC is invested by law with the power to represent aggrieved individuals in civil actions against employers to recover damages for discrimination. 42 U.S.C. § 2000e–5. Thus, a lawsuit litigated by the EEOC for the benefit of an aggrieved party can bar subsequent lawsuits by the aggrieved party, as the Third Circuit explained in *U.S. Steel Corp.*:

> Litigation involving a representative party may have claim preclusive effects in two ways. If the representative party litigates first, subsequent litigation involving persons on whose behalf the representative appeared may be precluded. Conversely, if a person first litigates in his own behalf, that person may be precluded from claiming any of the benefits of a judgment in a subsequent action that is brought or defended by a party representing him... In short, the doctrine of claim preclusion applies symmetrically to instances in which litigation by a representative precedes individual litigation and to those instances in which the opposite sequence occurs.

*U.S. Steel Corp.*, 921 F.2d at 493. In the EEOC Action, the EEOC represented Ms. Mohammed's interests as it is empowered by law to do. The issue then is whether the EEOC prosecuted the action with due diligence and reasonable prudence. If so, then the EEOC Action should have claim preclusive effect on the Mohammed Action now before the Court.

**2.** Ms. Mohammed concedes that the EEOC Action was a final judgment on the merits

involving the same claim that is at issue in the instant action. (D.I. 7 at 9).

Defendant contends that the EEOC vigorously prosecuted Ms. Mohammed's claim. Specifically, Defendant points out that the EEOC served written discovery requests on Defendant, fully responded to Defendant's written discovery requests and obtained an extension of time in order to secure Ms. Mohammed's input in responding to the requests. Defendant contends the EEOC's discovery responses in the EEOC Action are substantially similar to Ms. Mohammed's responses in the instant case. Moreover, Defendant contends that after Ms. Mohammed failed to appear for her first two noticed depositions, the EEOC asked Defendant to depose Ms. Mohammed by phone. Defendant also notes that even after Ms. Mohammed failed to appear for her fourth noticed deposition, the EEOC attempted to negotiate a financial settlement for Ms. Mohammed. Finally, Defendant contends that Ms. Mohammed's own deposition testimony supports its contention that the EEOC adequately represented her interests.

In response, Ms. Mohammed contends that the EEOC's public enforcement interests interfered with its ability to adequately represent Ms. Mohammed's private interests. Further, Ms. Mohammed contends the EEOC did not adequately represent her interests because it did not make sufficient efforts to help her return from Saudi Arabia for her deposition or to enable a telephonic deposition. Finally, Ms. Mohammed contends she was not in privity with the EEOC because she was not in control of the litigation in the EEOC Action.

Although it is difficult to tell Ms. Mohammed that she cannot obtain a decision on the merits of her claim, the Court is persuaded that Ms. Mohammed was in privity with the EEOC in the EEOC Action. The Court concludes that the EEOC prosecuted Ms. Mohammed's claim with due diligence and reasonable prudence. As Ms. Mohammed's representative, the EEOC filed a Complaint setting forth Ms. Mohammed's claim of religious discrimination against Defendant. Ms. Mohammed's claim provided the sole basis for the EEOC lawsuit. She was not just a member of a class of litigants. In the Complaint, the EEOC sought all available forms of relief available to Ms. Mohammed. Further, the EEOC accepted the cost of funding the litigation for Ms. Mohammed's discrimination claims. The EEOC filed initial disclosures naming Ms. Mohammed as a person with knowledge about the events at issue and noting that Ms. Mohammed was to be contacted through the EEOC. Additionally, the EEOC conducted written discovery and requested an extension of deadlines to obtain Ms. Mohammed's input in formulating discovery responses.

The EEOC negotiated with Defendant to schedule Ms. Mohammed's deposition. The EEOC attorneys contacted Ms. Mohammed repeatedly while she was in Saudi Arabia about the importance of attending her deposition. Despite the efforts of the EEOC on her behalf, Ms. Mohammed failed to attend the first two scheduled depositions because of her work schedule, the limits placed on her by her husband and Saudi Arabian society, and other reasons. In preparation for the April 9, 2002, deposition, EEOC attorneys talked with Ms. Mohammed by telephone on March 19th, April 4th, April 5th, and April 6th of 2002. (D.I. 45 at A77–A78). EEOC attorneys also talked with Ms. Mohammed on April 11th and April 15th of 2002 about her fourth scheduled deposition, which was to occur on April 17, 2002. *Id.* These phone calls indicate the EEOC's efforts to convey to Ms. Mohammed the importance of her attending the scheduled deposition. Additionally, in the Court's view, the phone calls demonstrate the persistence and diligence with which the EEOC attempted to

overcome the geographical and cultural hurdles Ms. Mohammed faced.

Based on the efforts the EEOC put forth for Ms. Mohammed in the litigation, the Court concludes that the EEOC's decision to stipulate to a dismissal of the EEOC Action was not unreasonable. Moreover, the Court notes that the EEOC continued its efforts on Ms. Mohammed's behalf even though she had secured employment two days after she applied for work with Defendant. (D.I. A42).

Ms. Mohammed argues that the EEOC's public enforcement function conflicted with or undermined its efforts to pursue relief for her as a private individual. After consideration of the record of the EEOC's enforcement effort, the Court concludes that there is no evidence to suggest that the EEOC's efforts to attain private relief for Ms. Mohammed were subordinated to its public enforcement function, particularly since she was the only individual whose claims were asserted in the litigation.

Ms. Mohammed also argues that she is not in privity with the EEOC because she did not control the course of the litigation in the EEOC Action. The Court concludes that this argument lacks merit. The issue in representational privity is not control; it is whether the representative prosecuted the action with due diligence and reasonable prudence. *Restatement (Second) of Judgments* § 42.

Ms. Mohammed's deposition testimony supports the Court's conclusion that the EEOC adequately represented Ms. Mohammed. Ms. Mohammed testified that she believed the EEOC was doing a good job with her case. (D.I. 45 at A69). Ms. Mohammed testified that she agreed to each of the four scheduled dates for her deposition, *Id.* at A81, and that an EEOC attorney told her that it was important for her to appear for her deposition. *Id.* at A79. Additionally, Ms. Mohammed testified that she spoke with an EEOC attorney by telephone on multiple occasions about her deposition. *Id.* at A77–A78. Finally, Ms. Mohammed testified that she does not know what else the EEOC could have done in handling her lawsuit and that she was happy with the EEOC's handling of her case. *Id.* at A69.

Based on this testimony and the other evidence of the EEOC's efforts, the Court concludes that the EEOC prosecuted Ms. Mohammed's claim with due diligence and reasonable prudence. Accordingly, the Court concludes that the EEOC and Ms. Mohammed were in privity and that Defendant has satisfied its burden of establishing the three elements of claim preclusion.

In sum, Defendant has a right to rely on the stipulated dismissal of the EEOC Action. Defendant expended resources defending itself in the EEOC Action against Ms. Mohammed's claim, and fairness dictates that it should not have to defend itself twice against the same allegations and the same party. Ms. Mohammed failed to pursue her opportunity with the EEOC to vigorously assert her claims, and it would be unjust for her to have a second opportunity against the same Defendant.

## CONCLUSION

For the reasons discussed, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 22nd day of July 2003, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (D.I.43) is *GRANTED.*