United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 28, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 03-31172

————————

DWIGHT VINES; VAN MCGRAW,

Plaintiffs-Appellees,

versus

UNIVERSITY OF LOUISIANA AT MONROE; BOARD OF
SUPERVISORS OF THE UNIVERSITY OF LOUISIANA
SYSTEM,

Defendants-Appellants.

————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana

————————————————————————

Before KING, Chief Judge, and SMITH and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The University of Louisiana at Monroe[1] and the Board of Trustees, University of Louisiana

System (hereinafter collectively "ULM") appeal the district court's denial of their motion for

permanent injunction under the "relitigation exception" to the Anti-Injunction Act claiming that the

———————————————

[1] Northeast Louisiana University changed its name to the University of Louisiana at Monroe
in 1999.

1

doctrines of res judicata and collateral estoppel preclude Dwight Vines' and Van McGraw's age discrimination suit filed in state court. We find that all of the elements of ULM's collateral estoppel claim have been satisfied and that the instant case falls within the relitigation exception to the Anti-Injunction Act. We therefore REVERSE and REMAND to the district court to enter an injunction preventing Vines and McGraw from proceeding with their state age discrimination claims against ULM.

I

Vines and McGraw are former administrators and faculty members of ULM. After serving a sufficient number of years to qualify for retirement benefits under the Teachers' Retirement System of Louisiana ("TRSL"), Vines voluntarily elected to retire in 1991 and McGraw elected to retire in 1989. Pursuant to the TRSL, they each received retirement benefits for life and one-hundred percent of their average compensation during their previous three years. Vines and McGraw were simultaneously rehired on a year-to-year basis and each worked for five years, receiving retirement benefits in addition to a salary for work performed. In January 1996, the University of Louisiana System adopted a policy prohibiting the re-employment of retirees on a regular full-time basis and Vines and McGraw were notified that they would not be rehired for the 1996-97 academic year.

Vines and McGraw filed identical suits in federal and state court, claiming ULM violated the federal Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 (2004) *et. seq.*) and Louisiana Employment Discrimination Law ("LAEDL") (LA. REV. STAT. ANN. § 23:301 (2004) *et. seq.*) by prohibiting re-employment of retirees, paying the plaintiffs less than younger professors, and increasing their workloads. ULM removed the state court suit under federal question jurisdiction and the cases were consolidated. The Equal Employment Opportunity Commission ("EEOC") then

instituted a separate action in federal court, naming Vines and McGraw as aggrieved parties, alleging violations of the ADEA by ULM. The EEOC action was also consolidated with Vines' and McGraw's cases.

ULM filed a motion for summary judgment seeking dismissal of all the remaining ADEA claims based upon *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000). The district court concluded that it lacked jurisdiction over Vines' and McGraw's ADEA claims, but that the EEOC was not barred from asserting those claims on their behalf. Vines' and McGraw's state law claims were remanded to state court. The district court then granted ULM's motion for summary judgment dismissing the EEOC lawsuit, finding that ULM's policy did not violate the ADEA. The EEOC sought to appeal the judgment, but then voluntarily dismissed the appeal.

ULM filed a peremptory exception of res judicata/collateral estoppel in the present case in state court, arguing that Vines and McGraw asserted the same claims and issues previously litigated and decided adversely to them in federal court. The Louisiana trial court granted the exception, dismissing the state claims with prejudice after finding that the federal principles of res judicata applied to bar the suit. The court noted that the federal court decision was rendered by a court of competent jurisdiction, the decision was final and on the merits, the EEOC and the plaintiffs were in privity, and the causes of action arose from the same nucleus of operative facts. The Second Circuit Court of Appeal in Louisiana reversed the trial court judgment, which had granted an exception of res judicata in favor of ULM, and reinstated the state court action, concluding that privity did not exist between Vines and McGraw and the EEOC. *Vines v. Northeast La. Univ.*, 839 So.2d 979, 987 (La.App. 2 Cir. 3/5/03). ULM's request for *en banc* rehearing in the Second Circuit and their application for writ to the Louisiana Supreme Court were denied. *Vines v. Northeast La. Univ.*, 853

3

So.2d 638, 638 (La. 9/19/03).

ULM filed a motion under the "relitigation exception" of the Anti-Injunction Act with the Western District of Louisiana seeking to enjoin Vines and McGraw's lawsuit in state court based on the federal court's decision in favor of ULM against the EEOC. The district court denied the permanent injunction and ULM appealed to this court.

II

We generally review a district court's denial of a motion for a permanent injunction for abuse of discretion. *See St. Paul Mercury Ins. Co. v. Williamson*, 332 F.3d 304, 308 (5th Cir. 2003). The application of the relitigation exception to the Anti-Injunction Act, however, is a question of law and therefore we review the district court's denial of ULM's motion for a permanent injunction *de novo*. *Id*.

The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court. 28 U.S.C. § 2283 (2004). There are only three specific circumstances in which a federal court can enjoin a state court proceeding, when it is: (1) expressly authorized by a federal statute; (2) necessary to assert jurisdiction; or (3) necessary to protect or effectuate a prior judgment by a federal court. *Id*.; *St. Paul Mercury Ins. Co.*, 332 F.3d at 308-09. The third exception is referred to as the "relitigation" exception. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

There are two related doctrines of preclusion: (1) claim preclusion, commonly referred to as res judicata, and (2) issue preclusion, known as collateral estoppel. *See Montana v. United States*,

4

440 U.S. 147, 153 (1979). In order to determine if the relitigation exception to the Anti-Injunction Act is applicable to preclude litigation of a claim in state court under the doctrine of res judicata, this court applies a four-part test. "First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits." *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)). The doctrine of collateral estoppel applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between parties, whether on the same or a different claim.") (*cited in Grogan v. Garner*, 498 U.S. 279, 284 (1991)). While complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation. *See Terrell v. DeConna.*, 877 F.2d 1267, 1270 (5th Cir. 1989).

Vines and McGraw concede that there was a judgment by a court of competent jurisdiction in the ADEA claim brought by the EEOC and that it was a final judgment on the merits.

### III

The issue this court must decide initially is whether, even if the state court mistakenly rejected ULM's res judicata claim, a federal court injunction is permitted against enforcement of the state

5

court judgment. The Supreme Court has stated that "[o]nce the state court has *finally* rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 524 (1986) (emphasis added). The Full Faith and Credit Act requires federal courts as well as state courts to give state judicial proceedings "the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (2004).

This court must determine whether the Louisiana state court decision, that the prior federal adjudication of the EEOC's claims does not bar the state court proceedings, would be given preclusive effect under Louisiana law and therefore be entitled to full faith and credit. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Louisiana law, in order for a judgment to be entitled to preclusive effect it must be a final judgment. LA. REV. STAT. ANN. § 13:4231 (2004). Louisiana law distinguishes between interlocutory judgments and final judgments. "A judgment that does not determine the merits but only preliminary matters in the course of an action is an interlocutory judgment." LA. CODE CIV. PROC. ANN. art. 1841 (2004). On the other hand, "[a] judgment that determines the merits in whole or in part is a final judgment." *Id.*

The state trial court in this case granted ULM's peremptory exception of res judicata, but the Louisiana Second Circuit Court of Appeal overruled the trial court's decision and remanded the case for a trial on the merits. Under Louisiana law, the overruling of a peremptory exception is an interlocutory judgment and thus not entitled to preclusive effect. *See Marsh Eng'g, Inc. v. Parker*, 680 So.2d 637, 638 (La. 09/27/96); *Bellard v. Biddle*, 834 So.2d 1238, 1241 (La. App. 3 Cir.

6

12/30/02). The Louisiana Supreme Court's denial of ULM's writ also did not decide the merits of the res judicata issue, but only allowed the interlocutory ruling to stand pending further review at a later stage of the proceeding. *Id*. Therefore, because the state courts' rulings on the res judicata issue were interlocutory and not final, a federal court may enjoin Vines and McGraw from relitigating, through a state court action, issues already decided against them in federal court.

IV

The district court concluded that Vines and McGraw could proceed with their Louisiana age discrimination suit, holding that they were not bound by the federal court decision because they were not a party in that suit nor was there privity between the EEOC and the individual plaintiffs. The district court adopted the magistrate judge's report and recommendation which accepted the ruling of the Louisiana Second Circuit Court of Appeals. *Vines*, 839 So.2d 979. The Louisiana court reasoned that because Vines and McGraw were denied an opportunity to assert their state claims in federal court, they maintained the right to sue under the state statutory scheme since the EEOC had no standing to prosecute such claims under Louisiana law. *Id*. at 987. The opinion also noted that the EEOC action was not prosecuted solely for the individual benefits of Vines and McGraw, but rather for the general public interest. *Id*. Finally, the state court held that Vines and McGraw had no control over the conduct of the suit prosecuted by the EEOC. *Id*.

Whether the district court may file an injunction under the Anti-Injunction Act hinges on whether the EEOC was in privity with Vines and McGraw. Privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Southwest Airlines Co. v. Tex. Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977). Federal courts have consistently held that a non-party to an action is still

7

bound by and entitled to the benefits of a judgment as though it were a party if it was represented in the original action. *See Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266-67 (5th Cir. 1990). It is well-settled precedent that a judgment in an action in which a government agency represents private individuals is binding on those individuals. *See Heckman v. United States,* 224 U.S. 413, 445-46 (1912). The EEOC is an agency expressly invested by law with the authority to represent the interests of individuals in civil actions against employers to recover damages for discriminatory practices. 42 U.S.C. § 2000e-5 (2004). We conclude that the EEOC did represent Vines and McGraw for res judicata and collateral estoppel purposes in the federal case brought against ULM.

In *Jones v. Bell Helicopter Co.*, this court considered the issue of "whether an individual may bring a private Title VII action, based on the same claim at issue in an earlier action brought by the [EEOC], when the Commission's action is set aside for failure to comply with the Administrative Procedure Act."[2] 614 F.2d 1389, 1389 (5th Cir. 1980). This court held that despite the EEOC's "ineptitude, sloth, and indifference" in failing to promptly pursue legal action on his behalf, res judicata barred the individual from pursuing the same claim because privity existed between him and the EEOC. *Id*. at 1391. This decision, however, preceded the Supreme Court's decision in *General Telephone. Co. of the Northwest, Inc. v. EEOC* which discussed how the interests of the EEOC and of the individual may be divergent. 446 U.S. 318, 326 (1980); *see also Riddle v. Cerro Wire and Cable Group, Inc.*, 902 F.2d 918, 923 (11th Cir. 1990). Also, unlike *Jones*, this is an ADEA claim and not a Title VII case. The distinctive enforcement scheme of the ADEA terminates the right of an individual to pursue an action once the EEOC commences an action to enforce the employee's

---

[2] The district court found that the EEOC had delayed its determination of cause and the issuance of the conciliation letters for 5-7 years in violation of the Administrative Procedure Act.

8

rights under the statute, whereas the enforcement scheme of Title VII does not terminate the rights of the employee once the EEOC brings a suit. 29 U.S.C. 626(c)(1) ("the right of any person to bring such action shall terminate upon the commencement of an action by the [EEOC] to enforce the right of such employee under [the ADEA]"). Therefore, the EEOC is not *always* to be considered the representative of individuals on whose behalf it brings an ADEA action. For example, the EEOC's role differs when it seeks to enjoin discrimination against an entire class or attempts to protect a broader interest than simply that of the individual plaintiff. In a situation where there is a clear divergence of interests between the EEOC and the aggrieved individual, we must determine in each case whether privity exists. This is not the situation in the present case and we express no view regarding the question of whether the doctrine of representative claim preclusion would apply in such a case.

In the present case, it is clear that the EEOC's interest did not diverge from that of Vines and McGraw. When the EEOC seeks private benefits for individuals under the ADEA, it takes on representative responsibilities that places it in privity with those individuals. Although this court has not addressed this specific issue, several other circuit s have reached this conclusion. The Third Circuit held that the "ADEA's distinctive enforcement scheme gives the EEOC representative responsibilities when it seeks private benefits for an individual and that the doctrine of representative claim preclusion must therefore be applied." *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 495 (3d Cir. 1990). In *U.S. Steel Corp.* the EEOC filed a complaint alleging that the United States Steel Corporation had violated the ADEA because employees were required to sign waivers as a condition for obtaining more favorable retirement benefits. Several employees had been unsuccessful with their individual suits on the same claim. The district court granted relief in the EEOC's case, including a

9

permanent injunction against requiring the release. The district court also determined that the earlier judgments against the individuals did not preclude retroactive relief. The Third Circuit focused on the "distinctive scheme" of the ADEA in reversing the district court, reasoning that the ADEA intended for the EEOC to act as the representative for individual employees when it sought to recover individual benefits for them, which is demonstrated by the fact that the individual's right to sue is cut off once the EEOC begins an action. *Id.*; 29 U.S.C. § 626(c)(1). The court viewed "the provision of the ADEA prohibiting private suits once the EEOC files its complaint as essentially a codification of the doctrine of representative claim preclusion with respect to those instances in which the EEOC litigates first: litigation by the representative party (the EEOC) seeking private relief for an individual precludes subsequent litigation of the same claim by an individual for whom the representative sought relief." *U.S. Steel Corp.*, 921 F.2d at 495.

Several other courts have followed the reasoning of the Third Circuit in *U.S. Steel Corp.*, recognizing that the ADEA places the EEOC in privity with individuals for whom it seeks relief such that a lawsuit litigated by either the EEOC or the individual bars subsequent relitigation of the same claims or issues. The Seventh Circuit held that the EEOC was barred from recovering back pay or liquidated damages on behalf of an individual who had previously litigated the same claim without success, stating that they "agree[d], generally, with the Third Circuit's position that there is privity between the EEOC and individuals for whom it seeks individual benefits." *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993). The Second Circuit also concluded that the statutory enforcement mechanism of the ADEA "gives the EEOC representative responsibilities when it seeks private benefits for an individual." *EEOC v. Kidder, Peabody & Co.*, 156 F.3d 298, 302 (2nd Cir. 1998) (quoting *U.S. Steel Corp.*, 921 F.2d at 495), *overruled on other grounds*, *EEOC v. Waffle*

10

*House, Inc.*, 534 U.S. 279 (2002). Several district courts have also considered the issue and have reached the same conclusion. *See EEOC v. TIC-The Indus. Co., et al.*, No. 01-1776, 2002 U.S. Dist. LEXIS 22728, at *8 (E.D. La. Nov. 21, 2002) ("the conclusion that the EEOC is the individual's representative in ADEA suits. . .seems inescapable."); *Mohammed v. May Dep't Stores*, 273 F.Supp.2d 531, 535 (D. Del. 2003); *EEOC v. Luce, Forward, Hamilton & Scripps*, 122 F.Supp.2d 1080, 1087-88 (C.D. Cal. 2000); *EEOC v. Nebco Evans Distrib. Inc.*, No. 8:CV96-00644, 1997 U.S. Dist. LEXIS 23111, at *11-12 (D. Neb. June 5, 1997).

The Second Circuit Court of Appeal in Louisiana relied almost entirely on the California state appellate court's decision in *Victa v. Merle Norman Cosmetics, Inc.* in holding that privity did not exist between the EEOC and Vines and McGraw. 19 Cal.App.4th 454 (1993). In *Victa*, the state court determined that an action in federal court brought by the EEOC under the ADEA claiming age discrimination did not serve as a res judicata bar to the individual plaintiff's state law age discrimination suit in state court. The individual plaintiff proceeded with her state court claim after the EEOC and the defendant in the federal suit agreed upon a stipulated judgment that included only injunctive relief. The court noted that "[a]lthough the complaint stated that the EEOC was bringing the case both to correct unlawful employment practices [of the defendant] and to make plaintiff whole, by the time it agreed to the judgment the EEOC had dispensed with plaintiff's particular interest, and was content to dismiss the case in exchange for [defendant's] submission to a general injunction. Surely, in obtaining the judgment here urged as res judicata the EEOC did not act as plaintiff's representative." *Id*. at 468.

The EEOC plays a dual role under the enforcement scheme of the ADEA, both protecting the public interest and vindicating specific private claims by seeking individual relief on their behalf. *See*

11

*Gen. Tel. Co. of the Northwest*, 446 U.S. at 331; *U.S. Steel Corp.*, 921 F.2d at 496. The responsibilities of each of these roles, however, does not necessarily conflict. Unlike in *Victa*, the EEOC in this case never abandoned the interests of the individual plaintiffs. The EEOC acted as Vines' and McGraw's representative in seeking monetary, "make-whole" relief in the federal case, the same relief they now seek in their state court action.[3]

The district court and the Louisiana Second Circuit reasoned that by expanding the class of victims in the suit to include others similarly situated with the plaintiffs, the EEOC was no longer prosecuting the action solely for Vines and McGraw, but in effect representing the general public. Therefore, the court concluded that privity did not exist because the EEOC sought to enjoin discrimination against a class of victims, not just the plaintiffs. The Louisiana court, however, failed to explain how any conflict of interest was created by the EEOC expanding the class of victims or by also seeking injunctive relief. Unlike in *Victa*, the EEOC did not seek as its sole relief a general injunction. The EEOC continued to pursue monetary, "make-whole" relief for Vines and McGraw, in addition to an injunction against ULM's practices.

The district court's contention that the absence of control by Vines and McGraw over the conduct of the suit by the EEOC prevented the suit from operating as a bar to their state court claims must also be rejected. "The absence of any formal designation of the individual claimants as parties . . . does not change the nature of the EEOC's role as the individuals' representative and should not change the effect of the doctrine of claim preclusion. By claiming or accepting individual relief won by the EEOC, the individual would necessarily concede that the EEOC was their representative and

_____

[3] In its complaint, the EEOC sought "make-whole" relief for Vines and McGraw, including "backpay, frontpay, with prejudgment interest,. . .with general compensatory damages." R. Vol. 15 at p. 7.

12

that they were embraced by the EEOC's judgment." *U.S. Steel Corp.*, 921 F.2d at 496. Vines and McGraw were named in the EEOC suit and there is no question that had the EEOC won its claim against ULM that they would have accepted the individual relief. Therefore, even if it is conceded that Vines and McGraw did not have any control over the federal suit, it does not affect the preclusive effects of the decision on their current state suit.

Vines and McGraw attempt to distinguish this case from the decisions in *U.S. Steel Corp.* and the other courts which have considered the issue by arguing that the sequence in which the duplicative lawsuits are filed or resolved determines whether privity applies. The doctrine of representative claim preclusion, however, applies equally regardless of the order of litigation. *U.S. Steel Corp.*, 921 F.2d at 493.

V

Res judicata requires that the same claim or cause of action be involved in both proceedings and the doctrine of collateral estoppel requires that the same issue of fact or law be actually litigated and determined in a prior judgment. *N.Y. Life Ins. Co.*, 203 F.3d at 387; *Ashe*, 397 U.S. at 443. Federal law of res judicata "bars all claims that were or could have been advanced in support of the causes of action on the occasion of its former adjudication, not merely those that were adjudicated." *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (emphasis omitted). Federal courts "use a transactional test to determine whether two claims involve the same cause of action, under which the critical question is 'not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts.'" *N.Y. Life Ins. Co.*, 203 F.3d at 387 (quoting *Agrilectric Power Partners v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994)). "Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal

13

standard used to assess them are the same in both proceedings." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

The state claims brought by Vines and McGraw and the federal suit brought by the EEOC are both age discrimination suits.[4] Each complaint alleged that ULM maintained a policy of paying state retirees lower wages and assigned them greater workloads than those who were not state retirees.[5] The state claim was brought under the Louisiana Employment Discrimination Law ("LAEDL")[6] and the federal suit was brought under the ADEA. The two statutes are substantively similar and federal and state courts routinely follow cases interpreting the ADEA when evaluating claims brought under the LAEDL, recognizing the same burden of proof and defenses. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998); *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 818 (5th Cir. 1990); *Montgomery v. Lobman, Carnahan, Batt & Angelle*, 729 So.2d 1075, 1077 (La.App. 4 Cir. 1999).

Both the federal suit brought by the EEOC and the state court suit brought by Vines and

---

[4] The EEOC complaint stated: "The Board's policy openly discriminates against employees on the basis of age." Vines and McGraw's complaint stated: "The Defendant Board discriminated against the plaintiffs' on the basis of their age. . ."

[5] The EEOC complaint stated: "The University admittedly paid Vines and McGraw less than non-retirees because of their retired status. The University assigned heavier workloads to retired non-tenure-track professors than to non-retired (younger) non-tenure track professors." Vines and McGraw's complaint similarly alleged: "During their tenure with [ULM] following their retirement through the TRSL, the Defendant [ULM] assigned them additional courses to teach than younger professors and paid them less salary than their younger counterparts. [ULM] violated the ADEA and [LAEDL] with these practices."

[6] Vines and McGraw filed their lawsuits under LA. REV. STAT. ANN. §§ 23:971 *et seq.* and 51:2232 *et seq.* After the filing of their lawsuits, the Louisiana Legislature amended the statutes and combined the antidiscrimination laws into one statute, LA. REV. STAT. ANN. § 23:301 *et. seq*, entitled the Louisiana Employment Discrimination Law.

McGraw involve claims that arise out of precisely the same set of facts[7], raise the same issues (including whether ULM discriminated against the individual plaintiffs in their pay, workloads and non-renewal of their contracts because of age), and seek monetary relief for Vines and McGraw.[8] The language in the complaints demonstrates the similarity between the two suits. The district court judge in the federal suit recognized that the claims involved the same facts and issues and consolidated Vines' and McGraw's state claims with the EEOC action.[9]

The district court ultimately held that ULM had "legitimate nondiscriminatory reasons for paying lower salaries to and not renewing the contracts of Vines and McGraw" and that the "EEOC ha[d] not produced sufficient evidence to show that the reasons were pretext for age discrimination." Collateral estoppel applies to preclude Vines and McGraw from relitigating these issues in their state court age discrimination action because they involve the same issues of ultimate fact that have been determined by a valid and final prior judgment.[10]

---

[7] The facts at issue in each suit, discussed *supra*, are not disputed by either party.

[8] The EEOC's complaint requested as relief that the court: "make whole [Vines and McGraw]. . .by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of [ULM's] unlawful employment practices. Order [ULM] to make whole [Vines and McGraw]. . .by paying liquidated damages in an amount equal to back wages, plus prejudgment interest. . ." Vines and McGraw's complaint requested as relief: "general compensatory damages for pain and suffering and mental anguish and distress, for liquidated damages pursuant to the ADEA, for attorney's fees and costs in this action, and for all general and equitable relief."

[9] The district court was forced to dismiss Vines' and McGraw's ADEA claims after the EEOC brought its action. It also remanded the state claims to state court.

[10] The state court suit, however, would not be barred by res judicata. The state court suit involves a claim under the LAEDL and the prior federal court decision adjudicated the EEOC's ADEA claim. Therefore, the same claim or cause of action is not being advanced in this suit as in the prior federal suit. *Nilsen*, 701 F.2d at 560. The EEOC also did not have standing to prosecute the state claims under Louisiana law and thus could not have brought the action that Vines and McGraw

15

VI

Vines and McGraw contend that, even if it is determined that the elements of res judicata or collateral estoppel are satisfied, they should not be precluded from proceeding with their state court claim. They argue that the EEOC failed to adequately represent them in the federal suit by voluntarily dismissing its appeal and that their state law claims were preserved when the federal court declined jurisdiction over the claims and remanded the state causes of action to the state court. We reject both arguments.

A

The district court in the federal case granted ULM's motion for summary judgment, dismissing the EEOC's case. Although the EEOC filed a Notice of Appeal, it withdrew its appeal. Vines and McGraw argue that the EEOC did not adequately represent them because the EEOC voluntarily dismissed its appeal in the federal case. As a result, they argue that res judicata and collateral estoppel cannot act as a bar to their state lawsuits.

Vines and McGraw assert that the proper test to determine adequate representation is whether the representative "vigorously and tenaciously protected the interests of the class" and so long as an appeal could not be characterized as patently meritless or frivolous, a representative must pursue an appeal or they will be considered to have provided inadequate representation.[11] This court, in *Gonzalez v. Cassidy*, refused to bar a subsequent lawsuit by a member of a class represented in a class action lawsuit because the class representative had not adequately represented the interests of

bring in the current suit. *Id.*

[11] The magistrate judge, in her report and recommendation, stated that even if there was privity between the EEOC and the individual plaintiffs, the EEOC failed to adequately represent their claims based on this reasoning.

the class. 474 F.2d 67, 75-76 (5th Cir. 1973). We held that the failure of the class representative to appeal from a judgment which granted him relief, while denying relief to other class members, rendered his representation of the class inadequate so as to preclude res judicata from attaching to that judgment. *Id*. at 75. The court noted that the class representative "vigorously represented the class until he obtained individual relief." *Id*. at 76.

*Gonzalez* and the other cases cited by Vines and McGraw in support of their "adequacy" argument were class action cases in which the courts were required under FED. R. CIV. P. 23 to determine whether the class representative adequately represented absent members of the class . The procedural rules of Rule 23, however, do not apply to EEOC representative actions under the ADEA. *Gen. Tel. Co. of the Northwest, Inc.*, 446 U.S. at 330.

The record establishes that the EEOC acted with due diligence and reasonable prudence. They conducted and participated in discovery, filed motions for summary judgment, and responded to motions filed by ULM. The EEOC did not inadequately represent Vines and McGraw simply because it made a calculated decision to voluntarily dismiss its appeal.[12]

B

Vines and McGraw argue that when a federal court declines jurisdiction over a state law claim in a federal lawsuit and remands the state cause of action to the state court that the state law claim is preserved and not subject to res judicata or collateral estoppel. In *King v. Provident Life and Accident Insurance Co.*, the plaintiff originally filed a lawsuit in state court for causes of action under

---

[12] The RESTATEMENT (SECOND) OF JUDGMENTS states that "[a] person is not bound by a judgment for or against a party who purports to represent him if. . .The representative failed to prosecute or defend the action with due diligence and reasonable prudence. . ." § 42 (1982); *see also Mohammed*, 273 F.Supp.2d at 535.

ERISA as well as state claims pertaining to an inadequate opportunity to convert an insurance policy. 23 F.3d 926 (5th Cir. 1994). The defendant removed the case to federal court where its motion for summary judgment was granted, dismissing all the claims except the state law claims. The district court judge specifically stated that "plaintiffs, of course, retain the right to file another lawsuit with regard to [the state law claims]." *Id*. at 928. We held that the district court's language limited the preclusive effect of the dismissal of the federal claims, reasoning that a court has the ability to control the preclusive consequences of its rulings. *Id*. "Despite the general rule that a court cannot dictate preclusion consequences at the time of deciding a first action, it should have power to narrow the ordinary rules of claim preclusion. A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion."[13] *Id*. (quoting 18 CHARLES A. WRIGHT ET. AL., FEDERAL PRACTICE & PROCEDURE § 4413 (1981)).

Unlike *King*, in which the district court specifically stated that plaintiffs retained the right to file another lawsuit, the district court judge made no such reservation of rights in either the remand order or the final judgment in this case. Absent an *express* reservation, res judicata applies to bar a second suit. Therefore, when two suits are pending based on the same claim or issue, the first final judgment rendered becomes conclusive in the other action. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000); *see also* LA. CODE CIV. PROC. ANN. art. 531 (1999).

---

[13] The RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1982) (emphasis added) also states that:
(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:. . .
(b) The court in the first action has *expressly* reserved the plaintiff's right to maintain the second action. . .

## VII

Because all of the elements of collateral estoppel have been satisfied, we find that this case falls within the boundaries of the relitigation exception to the Anti-Injunction Act. Accordingly, we REVERSE the judgment of the district court and REMAND the case for issuance of a permanent injunction enjoining Vines and McGraw from proceeding with their state court age discrimination suit against ULM.